UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-44595 |
| AGRI-BEST HOLDINGS, LLC, *et al..*, | ) | Hon. Eugene R. Wedoff |
| | ) | Hearing Date:   October 8, 2010 |
| Debtors. | ) | Hearing Time:   9:00 a.m. |

## NOTICE OF EMERGENCY MOTION

TO:   See Attached Service List

**PLEASE TAKE NOTICE** that on **October 8, 2010 at 9:00 a.m.** or as soon thereafter as counsel may be heard, I shall appear before the **Honorable Eugene R. Wedoff,** Bankruptcy Judge, in Courtroom No. 744, U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, or in his absence, before such other Judge who may be sitting in his place and stead and hearing bankruptcy motions, and shall then and there present the **Debtors' Emergency Motion for the Entry of an Order (1) Authorizing Payment of Certain Prepetition Employee Obligations; (2) Authorizing the Continuation of Employee Benefit Plans, and (3) Directing All Banks to Honor Prepetition Checks for Payment of Prepetition Employee Obligations,** a copy of which is attached and herewith served upon you, and shall pray for the entry of an order in conformity with the prayer of said pleading.

**AT WHICH TIME AND PLACE** you may appear if you so see fit.

>                                   Steven B. Towbin (#2848546)
>                                   Peter J. Roberts (#6239025)
>                                   Kimberly Bacher (#6285677)
>                                   Shaw Gussis Fishman Glantz
>                                       Wolfson & Towbin LLC
>                                   321 North Clark Street, Suite 800
>                                   Chicago, Illinois 60610
>                                   (312) 541-0151  telephone
>                                   (312) 980-3888  facsimile

## CERTIFICATE OF SERVICE

Kimberly Bacher certifies that she caused to be served a true copy of the above and foregoing notice and attached motion upon the attached Service List in the manner so indicated below, on this 5th day of October, 2010.

>                                   /s/ *Kimberly Bacher*

{10007-001 MOT A0274001.DOC 5}

**Master Service List**

*Via Electronic Mail*

John Fortino
Protein Solutions
4220 S. Kildare Avenue
Chicago, Illinois 60632
johnf@proteinsolutions.net

Bill Kulach
Protein Solutions
4220 S. Kildare Avenue
Chicago, Illinois 60632
billk@proteinsolutions.net

Timothy J. Reiter
Protein Solutions
4220 S. Kildare Avenue
Chicago, Illinois 60632
timr@proteinsolutions.net

Ronald L. Sandack
Gaido & Fintzen
30 North LaSalle, Suite 3010
Chicago, Illinois 60602
rsandack@gaido-fintzen.com

Charles B. Wolf
Vedder Price PC
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601
cwolf@vedderprice.com

Richard H. Fimoff
RSP CHICAGO
25 East Washington Street, Suite 1000
Chicago, Illinois 60602
RFimoff@rsplaw.com

Abraham E. Brustein
DiMonte & Lizak, LLC
216 Higgins Road
Park Ridge, IL 60068
abrustein@dimontelaw.com

Spencer G. Markle
Marke De La Cruz, LLP
17100 El Camino Real, Suite 500
Houston, TX 77058
spencer@marklelawfirm.com

Samuel M. Williams
Focus Management Group
5001 W. Lemon Street
Tampa, FL 33609-1103
s.williams@focusmg.com

David Lobdell
Woodvale Partners
335 East Geneva Road, Ste. #366
Carol Stream, IL 60188
David.lobdell@woodvalepartners.com

Jeremy R. Degenhart
Advantage Capital Partners
7733 Forsth Boulevard, Suite 1850
St. Louis, MO 63105
jdegenhart@advantagecap.com

*Via Electronic Mail and Federal Express*

Kathryn M. Gleason
Office of the U.S. Trustee
219 South Dearborn Street, Suite 873
Chicago, IL 60604
kathryn.m.gleason@usdoj.gov

Timothy F. Nixon
Godfrey & Kahn
333 Main Street, Suite 600
Green Bay, Wisconsin 54307-3067
tnixon@gklaw.com

Steve Jakubowski
Coleman Law Firm
77 West Wacker Drive
Chicago, Illinois 60601
sjakubowski@colemanlawfirm.com

Jennifer B. Herzog
Godfrey & Kahn
780 North Water Street
Milwaukee, WI 53202-3590
jherzog@glklaw.com

**20 Largest Creditors**

*Via Federal Express*

Lincoln Provision Inc.
824 West 38th Place
Chicago, IL 60609

4220 Kildare LLC
2340 River Road Suite 310
Des Plaines, IL 60018

The Ettlinger Corporation
175 Olde Half Day Rd., Suite 247
Lincolnshire, IL 60069

Weinstein Wholesale Meats
135 S. LaSalle St., Dept 2906
Chicago, IL 60603

College Drive Dental
7550 College Drive
Palos Heights, IL 60463

John R. Morreale
216 N. Peoria St.
Chicago, IL 60607

David A. Phillips
1094 Westberry Ct
Lake Zurich, IL 60047

Midland Packaging
101 E. Palatine Rd.
Wheeling, IL 60090

Amigo Meat Distributors L.P.
5251 S. Millard
Chicago, IL 60632

Tyson Fresh Meats 533019
140 Charles W Grant Parkway, Floor 1
Atlanta, GA 30354

Economy Packing Co.
939 W. Fulton Market
Chicago, IL 60607

Atilla Donmez
14457 Keeler Ave
Midlothian, IL 60445

M.V. & Son's LLC
300 Heron Drive
Swedesboro, NJ 08085

Infinity Service Management
1550 South Indiana Ave.
Chicago, IL 60605

*Via U.S. Express Mail*

Marcus Foods
P.O. Box 781659
Wichita, KA 67278-1659

Bay View Funding
Acct. of Absolute Staffing LLC.
P.O. Box 881774
San Francisco, CA 94188-1774

Cryovac
P.O. Box 91279
Chicago, IL 60693-1279

Premium Iowa Pork, LLC
P.O. Box 188
Hospers, Iowa 51238

J&B Group
N. W. 6090
P.O. Box 1450
Minneapolis MN 55485-6090

Abbyland Pork Pack, Inc.
Box 88840
Milwaukee, WI 53288-0840

{10007-001 MOT A0274001.DOC 5}                 4

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-44595 |
| AGRI-BEST HOLDINGS, LLC, *et al..*, | ) | Hon. Eugene R. Wedoff |
| | ) | Hearing Date:   October 8, 2010 |
| Debtors. | ) | Hearing Time:   9:00 a.m. |

**DEBTORS' EMERGENCY MOTION FOR THE ENTRY OF AN ORDER
(1) AUTHORIZING PAYMENT OF CERTAIN PREPETITION
EMPLOYEE OBLIGATIONS; (2) AUTHORIZING THE CONTINUATION
OF EMPLOYEE BENEFIT PLANS; AND (3) DIRECTING ALL BANKS TO
HONOR PREPETITION CHECKS FOR PAYMENT OF PREPETITION
EMPLOYEE OBLIGATIONS**

Agri-Best Holdings, LLC ("ABH") and Agri-Best Properties, LLC ("ABP" and together with ABH, the "Debtors"), pursuant to 11 U.S.C. §§ 105, 363(b) and 507(a) and Fed. R. Bankr. P. 6003, move this Court for entry of an order (1) authorizing the Debtors to pay certain prepetition employee obligations including payroll-related withholdings; (2) authorizing the continuation of employee benefit plans on a postpetition basis; and (3) directing all banks to honor prepetition checks for payment of prepetition employee obligations (the "Motion"). In support of the Motion, the Debtors respectfully state as follows:

### I. INTRODUCTION

A.    **The Debtors' Chapter 11 Cases**

1.    On October 5, 2010 ("Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Since then, the Debtors have remained in possession of their assets and have continued to operate their business as debtors in possession in accordance with 11 U.S.C. §§ 1107 and 1108.  The Debtors have all of the rights and powers of a trustee in bankruptcy pursuant to 11 U.S.C. § 1107(a).

2. This Court has jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157(b)(2) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

### B. The Debtors' Business and Events Leading to Chapter 11

3. The Debtors are Illinois limited liability companies with their principal place of business located on the southwest side of Chicago, Illinois. ABH, which does business under the trade name of "Protein Solutions," is a leading processor and distributor of portion control meat products to national restaurant chains, food distributors, and consumers. ABP owns ABH's former operating facility at 4430 S. Tripp Avenue in Chicago, and it is a wholly-owned subsidiary of ABH.

4. ABH processes beef, pork, and poultry products through three primary service offerings (portioning, flavoring, and packaging), and it produces and distributes several hundred different types of portion-controlled cuts of meat to restaurant chains, food service distributors, and food wholesalers nationally. "Portion-controlled" products are precut specified sizes of meat, individually or bulk packed, which are then delivered frozen or fresh to the customer. Retail chains and food service distributors are attracted to portion-controlled meats in order to (i) ensure improved cost control, (ii) obtain consistent product with less waste, and (iii) reduce or eliminate their own overhead relating to cutting operations.

5. The Debtors originated from the 2003 purchase of Agri-Best Foods, which was a small meat processor focused almost exclusively on ham products. Capitalizing on Agri-Best's underutilized USDA-certified facility on Tripp Avenue, ABH immediately began overhauling and upgrading all operations, product offerings, customer relationships, and purchasing activities. Within five years, ABH had increased its annual sales from $5 million to over $140 million, and it also outgrew the 36,000 square foot Tripp Avenue facility in the process. As a

{10007-001 MOT A0274001.DOC 5}    2

result, in 2008, ABH began moving all of its operations to a new, state-of-the-art facility at 4220 S. Kildare, where it currently leases approximately 165,000 square feet. The Debtors have over 300 employees.

6. Although ABH had a profitable year in 2008, the increased expenses and liabilities associated with its move from the Tripp Avenue facility to the Kildare facility caused liquidity problems in 2009. Among other problems, those increased expenses and liabilities, coupled with the posting of a large ineligible receivable, caused ABH to trip various financial covenants in its credit facility with its senior secured lender, Wells Fargo Bank, N.A. ("Wells Fargo"). In order to address its liquidity problems, ABH actively sought recapitalization opportunities with the assistance of an investment banking firm.

7. In June 2010, ABH succeeded in attracting additional refinancing and equity capital totaling approximately $7.8 million from Advantage Capital Community Development Fund XXV, LLC ("Advantage" and together with Wells Fargo, the "Prepetition Lenders"). However, that funding was inadequate to stave off ABH's liquidity problems. Uncertain economic conditions this past summer caused an industry-wide dip in demand as consumers chose grocery purchases over restaurant dining. That industry trend translated into a severe decline in ABH's sales at a time when its raw material costs remained relatively high. Due to these and other adverse financial conditions, ABH completely exhausted the availability under its credit facility with Wells Fargo, and ABH's operating flexibility deteriorated rapidly as a result.

8. Although the Debtors have investigated possible restructuring options, their lack of working capital and the exhaustion of availability under the Wells Fargo credit facility have left them with no alternative but to pursue an orderly winddown of their operations and a

disposition of their assets. The Debtors believe that the chapter 11 process and the protections of the automatic stay provide the most efficient platform to effect that winddown and disposition. Subject to this Court's approval, Wells Fargo has agreed to provide debtor in possession financing and the use of its cash collateral to fund the effort.

## II. RELIEF REQUESTED

9. The Debtors employ approximately 350 employees, including full-time and part-time hourly wage earners and salaried personnel (collectively, the "Employees").

10. The Debtors pay the Employees every Friday. Each paycheck includes earnings for all work performed for the previous one-week period ending on the Saturday preceding the Friday pay date. Accordingly, at any given time, the Debtors have outstanding payroll-related obligations to their Employees.

11. The most recent payroll date for the Debtors was October 1, 2010. This pay period covered services rendered between September 19 through September 25, 2010. Therefore, as of the Petition Date, the Debtors are in arrears for payroll for the time period beginning on September 26, 2010 and ending October 4, 2010 (the "Hourly Prepetition Period").

12. By this Motion and subject to the terms of any cash collateral orders and/or debtor in possession financing orders entered by this Court, the Debtors seek the entry of an order pursuant to §§ 105(a), 363(b)(1), 507(a)(4) and 507(a)(5) authorizing the Debtors to (a) pay or otherwise honor certain prepetition wage, salary and other compensation claims of their Employees arising in the Prepetition Period and (b) maintain their existing Employee benefit programs, including the payment of certain prepetition obligations related thereto (collectively, the "Employee Obligations").

13. The Debtors also seek confirmation that they are permitted to pay all local, state and federal withholding and other payroll-related taxes and other withholdings relating to the

{10007-001 MOT A0274001.DOC 5}                                4

Prepetition Period, including, but not limited to, Social Security taxes, Medicare taxes, retirement contributions, health care payments and garnishments.

14. Finally, the Debtors seek an order directing all banks to honor all of the Debtors' checks or wire transfers, whether issued before or after the Petition Date, with respect to payments authorized by this Motion.

### III. EMPLOYEE OBLIGATIONS

#### A. Compensation Obligations

15. **Prepetition Wages**. The Debtors seek to pay wages and salaries accrued during the Prepetition Period (collectively, the "Wages"). Wages were due and owing on the Petition Date because the Debtors' chapter 11 petitions were filed during regular and customary salary and hourly wage payroll period of the Debtors.

16. The Debtors do not seek to pay any individual Employee more than the $11,725 entitled to priority under § 507(a)(4).

#### B. Employee Benefits

17. In the ordinary course of business, the Debtors have established various employee benefit plans and other policies. As described below, the Debtors' provide certain programs including vacation, medical and other benefits to their union and non-union Employees. The benefits provided to union employees of the Debtors (the "Union Employees") are governed by the Agreement by and between Protein Solutions, LLC and United Food and Commercial Workers Union Local 1546 of the United Food and Commercial Workers International Union (the "Union") (November 1, 2009 through October 31, 2012) (the "Union Agreement"). The benefits provided to non-union employees of the Debtors (the "Non-Union Employees") have been established in the ordinary course of the Debtors' business. The benefits provided to the

Union Employees (the "Union Benefits") and the Non-Union Employees (the "Non-Union Benefits" and, together with the Union Benefits, the "Employee Benefits") are described below. By this Motion, the Debtors request authority to continue these benefit programs and to pay certain prepetition obligations with respect to such programs.

18. **UNION EMPLOYEES.** In the ordinary course of their businesses, the Debtors provide Union Employees with the following benefits:

(a) **Vacation Pay.** Pursuant to the Union Agreement, Union Employees are entitled to a given number of days of paid vacation based on years of service. Specifically,

(i) Union Employees with one year of continuous service are allowed one week's vacation with full pay in each calendar year.

(ii) Union Employees with three years of continuous service are allowed two weeks' vacation with full pay in each calendar year.

(iii) Union Employees with eight years of continuous service are allowed three weeks' vacation with full pay in each calendar year.

(iv) Union Employees with fifteen years of continuous service are allowed four weeks' vacation with full pay in each calendar year.

(b) As of the Petition Date, certain Union Employees had accrued unused vacation days. The Debtors request that all Union Employees be authorized to take accrued vacation days during their continued employment with the Debtors and in the ordinary course of the Debtors' businesses. By this Motion, the Debtors also request that they be authorized, but not directed, to "cash out" any unused vacation time to the Employees, which payments shall remain subject to the terms of any cash collateral and/or postpetition financing orders approved by this Court and the statutory cap set forth under § 507(a)(4).

(c) **Insurance and Pension Benefits for Union Employees.** Pursuant to the Union Agreement, the Debtors agreed to provide certain insurance coverage and other benefit plans to its Union Employees. Specifically, effective January 1, 2010, the Debtors agreed to contribute

{10007-001 MOT A0274001.DOC 5}                                    6

$418.00 per month for each Union Employee, and effective November 1, 2010, the Debtors agreed to contribute $464.00 per month of each Union Employee. This amount is used for health and welfare benefits for Union Employees and their dependents covered by the Union Agreement. The Debtors also deduct $29.00 per month for each Union Employee for certain Union benefits. This amount is then remitted to the Union. The Debtors request that they be permitted to continue to take such deductions and remit the necessary payments to the Union.

19. The Debtors seek authority to pay the Union Benefits incurred prior to the Petition Date and to continue honoring such obligations that arise postpetition. If the Debtors' request is authorized, the payment of prepetition Union Benefits to each Union Employee will not exceed either (i) the amounts authorized in any cash collateral order and/or debtor in possession financing approved by the Court or (ii) the maximum priority accorded to such claims under § 507(a)(4).

20. **NON-UNION EMPLOYEES.** In the ordinary course of their businesses, the Debtors provide the following insurance and vacation benefits to Non-Union Employees:

(a) **Vacation Benefits**. Unless otherwise negotiated, each Non-Union Employee, is entitled to the same number of days of paid vacation based on years of services pursuant to the schedule set forth in Paragraph 18(a) of this Motion. The Debtors request that all Non-Union Employees be authorized to take accrued vacation days during their continued employment with the Debtors and in the ordinary course of the Debtors' businesses. By this Motion, the Debtors request that they be authorized, but not directed, to "cash out" any unused vacation time to the Employees, which payments shall remain subject to the terms of any cash collateral and/or postpetition financing orders approved by this Court and the statutory cap set forth under § 507(a)(4).

(b) **Insurance Benefits.** The Debtors provide each Non-Union Employee with certain insurance coverage. For each Non-Union Employee that is eligible for insurance coverage and depending on the specific coverage elected, the Debtors have agreed to pay $500.00 to $1,662.00 per month. The Debtors request that they be authorized to continue providing these benefits to their eligible Non-Union Employees in the ordinary course of their businesses.

(c) **Simple IRA Program.** The Debtors provide a two percent (2.0%) match for each participating Non-Union Employee in a Savings Incentive Match Plan for Employees ("Simple IRA"). Under the Simple IRA, certain Employees make contributions to traditional Individual Retirement Arrangements (IRAs), subject to certain limits. By this Motion, the Debtors request authority to continue to honor any required contributions pursuant to the Simple IRA.

(d) **Reimbursable Business Expenses.** Prior to the Petition Date and in the ordinary course of their business, the Debtors reimbursed certain Non-Union Employees for certain expenses incurred in the scope of their employment. As of the Petition Date, the Debtors estimate that they owe approximately $10,000 of reimbursable expenses to approximately ten Employees, consisting of phone costs, internet charges, car expenses, mileage reimbursement and miscellaneous business expenses (collectively, the "Expense Reimbursements"). All of such expenses were incurred on the Debtors' behalf and with the understanding that they would be reimbursed. To avoid harm to the Employees, the Debtors seek authority to pay these Expense Reimbursements in the ordinary course of business.

C. **Payroll-Related Withholding Taxes and Other Withholding**

21. The Debtors routinely withhold from Employees' paychecks amounts that the Debtors are required to remit to third parties. Examples of such withholding include Social

Security taxes, federal, state and local income taxes, Simple IRA, certain Union obligations and healthcare payments. The Debtors believe that such funds, to the extent that they remain in the Debtors' possession, constitute monies held in trust and, therefore, are not property of the Debtors' estates. In addition, whether or not such funds are for prepetition amounts, the Debtors believe that directing such funds to the appropriate parties is in the ordinary course of business and, therefore, does not require bankruptcy court approval. Notwithstanding, and out of an abundance of caution, the Debtors request authority to pay or direct the transfer of such funds in the ordinary course of their businesses.

## IV. BANK ACCOUNTS

22.  Finally, the Debtors request that the order granting the relief requested herein also authorize and direct all banks to receive, process, honor and pay any and all checks or electronic transfers drawn on the Debtors' payroll and general accounts related to the payments authorized thereunder, whether presented before or after the Petition Date, upon receipt by each bank and institution of notice of such authorization, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

## V. APPLICABLE AUTHORITY

23.  The Court should authorize the Debtors to pay the Wages and Employee Benefits, and to maintain the employee benefit programs pursuant to §§ 105(a), 363(b), 507(a)(4) and 507(a)(5).

24.  Section 507(a)(4) requires that certain claims for prepetition wages, salaries or commissions including vacation, severance and sick leave pay be accorded a priority in payment up to $11,725 per individual if earned within 180 days of the Petition Date. 11 U.S.C. § 507(a)(4). In addition, § 507(a)(5) requires that certain claims for contributions to employee

benefit plans arising from services rendered within 180 days of the Petition Date be accorded a priority in payment. 11 U.S.C. § 507(a)(5).

25. As reflected above, this Motion does not contemplate paying any Employee in excess of the priorities afforded under § 507(a). For that reason, the Debtors submit that if the Court authorizes the payment of the Wages and Employee Benefits, such payments will not significantly alter the Bankruptcy Code's distribution scheme. To the extent the Employees subsequently file claims against the Debtors asserting a § 507(a) priority, the Debtors expect the priority portion of such claims to be reduced by any amounts paid hereunder.

26. The relief requested in this Motion finds support under §§ 363(b)(1) and 105(a). Section 363(b)(1) authorizes a debtor in possession to use property of the estate other than in the ordinary course of business, after notice and hearing. In interpreting Section 363(b)(1), courts have applied a variety of standards, including a business judgment test, *In re Condere Corp.*, 228 B.R. 615, 630 (Bankr. S.D. Miss. 1998); *WBQ P'ship v. Va. Dep't of Med. Assistance Servs. (In re WBQ P'ship)*, 189 B.R. 97, 102 (Bankr. E.D.Va. 1995), a good faith test determining whether the sale is fair and equitable, *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987), and a test to assess whether the transaction is in the best interest of the estate, *In re Stein*, 281 B.R. 845, 852 (Bankr. S.D.N.Y. 2002). *See In re Zeigler*, 320 B.R. 362, 381 (N.D. Ill. 2005). Further, the Seventh Circuit has stated that there must be an "articulated business justification" for the use of property outside the ordinary course of business. *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991).

27. In addition, § 105(a) authorizes this Court, pursuant to its general equitable powers, to issue such orders as are necessary to carry out the provisions of the Bankruptcy Code. The Court's use of such authority to implement the priority provisions of § 507(a) under

appropriate circumstances is well established. This is not a case where the Debtors seek to elevate the unsecured claims of a select few. Rather, the Debtors are attempting to treat their Employees equally, and seek Court authority to pay only such amounts entitled to priority treatment under the Bankruptcy Code. Further, since these priority claims must be satisfied in full before the claims of the Debtors' general unsecured creditors, no unsecured creditor will be prejudiced by an order granting the relief requested herein.

28. The payment of the prepetition Wages and Employee Benefits is clearly justified under the circumstances. If not timely paid, most of the Employees will suffer hardship. In addition, any delay would seriously further impact Employee morale.

29. Nothing contained in this Motion shall constitute a request for authority to assume any agreements, policies or procedures relating to any executory contracts or agreements, including, but not limited to, any benefit plans, employment agreements, collective bargaining agreements or severance agreements to which the Debtors are a party.

30. To preserve the goodwill of the Employees, this Motion should be granted accordingly. The Debtors also request that the relief requested herein be granted on an immediate basis pursuant to Fed. R. Bankr. P. 6003. If the Debtors are not permitted to pay the prepetition Wages and Employee Benefits, the continued goodwill of the Employees will deteriorate rapidly. The Debtors' estates will be immediately and irreparably harmed as a result, as the Employees will likely terminate their employment with the Debtors and cease to provide the necessary services that the Debtors require to effectuate an orderly winddown of their estates.

## VI. NOTICE

31. Notice of this Motion was served on the Office of the United States Trustee, counsel to the Prepetition Lenders and the Debtors' consolidated list of the twenty (20) largest

unsecured creditors. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors request the entry of an order (a) granting the relief requested herein and (b) granting such other and further relief as is just and equitable.

Dated: October 5, 2010

Respectfully submitted,

Agri-Best Holdings, LLC
Agri-Best Properties, LLC

By: */s/ Kimberly Bacher*
     One of their attorneys

Steven B. Towbin (#2848546)
Peter J. Roberts (#6239025)
Kimberly Bacher (#6285677)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151 telephone
(312) 980-3888 facsimile
stowbin@shawgussis.com
proberts@shawgussis.com
kbacher@shawgussis.com

## RULE 9011 CERTIFICATION REGARDING
## REQUEST FOR EMERGENCY HEARING

I hereby certify, as a member of the Bar of this Court, that I have carefully examined this matter and that there is a true necessity for an emergency matter. I certify further that the necessity for this emergency hearing has not been caused by any lack of due diligence or intentional action or failure to act on my part or by my client, but has been brought about only by the circumstances of this case.

Dated: October 5, 2010

Respectfully submitted,

Agri-Best Holdings, LLC
Agri-Best Properties, LLC

By:  /s/ Steven B. Towbin
     One of their attorneys

Steven B. Towbin (#2848546)
Peter J. Roberts (#6239025)
Kimberly Bacher (#6285677)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 541-0151
stowbin@shawgussis.com
proberts@shawgussis.com
kbacher@shawgussis.com

{10007-001 MOT A0274001.DOC 5}