UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: | Chapter 11 |
| AGRI-BEST HOLDINGS, LLC<br>and<br>AGRI-BEST PROPERTIES, L.L.C., | Case No. 10-44595 |
| | Jointly Administered<br>Hearing Date: November 9, 2010<br>Hearing Time: 10:00 a.m. |
| Debtors. | |

**FINAL ORDER (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING, AND (IV) GRANTING LIENS, SECURITY INTERESTS AND PRIORITY CLAIMS**

This matter having come before the Court on November 9, 2010 (the "Final Hearing") on the Motion of Agri-Best Holdings, LLC d/b/a Protein Solutions ("Holdings") and Agri-Best Properties, L.L.C. ("Properties," and collectively with Holdings, the "Debtor") for Interim and Final Orders (I) Authorizing Debtor to Use Cash Collateral, (II) Granting Adequate Protection, (III) Authorizing Debtor to Obtain Post-Petition Financing, and (IV) Granting Liens, Security Interests and Priority Claims (the "Motion"); this Court having (i) conducted a preliminary hearing (the "Preliminary Hearing") on the Motion on October 8, 2010, and (ii) entered orders on October 8, 2010 and October 26, 2010 granting interim relief under the Motion pursuant to Bankruptcy Rule 4001 and scheduling the Final Hearing to consider the entry of this final order (the "Final Order") on the Motion; a written objection ("Committee Objection") to the Motion having been filed by the Official Committee of Unsecured Creditors appointed in the Debtors' cases ("Committee"); the Committee Objection having been resolved and withdrawn with prejudice through this Court's entry of an agreed order on November 3, 2010; and no other objections to the Motion having been filed. For reasons set forth in the Motion and at the Preliminary Hearing and the Final Hearing, and for good cause shown,

IT BEING REPRESENTED TO THE COURT AS FOLLOWS:

A.        On October 5, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor retains possession of its property and continues to operate its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

B.        The court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157(b) and 1334. This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.        The Motion was filed pursuant to §§ 363 and 364 of the Bankruptcy Code and Fed. R. Bankr. P. 2002, 4001 and 9014.

D.        Lender claims and Debtor acknowledges that prior to the Petition Date, Holdings and Protein Solutions, LLC ("Protein") entered into that certain Amended and Restated Credit and Security Agreement dated June 2, 2010 (as amended, the "Credit Agreement") with Wells Fargo Bank, National Association, acting through its Wells Fargo Business Credit operating division (the "Lender"), and Properties issued that certain Amended and Restated Real Estate Term Note dated June 2, 2010, in favor of Lender (the "Real Estate Note").

E.        All obligations of Holdings and Protein to the Lender are guarantied by Properties, and all obligations of Properties to the Lender are guarantied by Holdings and Protein pursuant to certain Amended and Restated Guaranties, each dated June 2, 1010 (collectively, the "Guaranties").

F.        On July 2, 2010, Protein merged with and into Holdings.

G.        Pursuant to the terms and conditions set forth in the Credit Agreement, the Real Estate Note, the Guaranties and the other agreements, documents and instruments executed and/or delivered in connection therewith (collectively, the "Financing Agreements") the Lender

made loans and advances and provided other credit and financial accommodations to the Debtor. Without prejudice to the rights of non-Debtor parties under paragraph 8(b) below, the Debtor acknowledges and agrees that the Credit Agreement, the Real Estate Note, the Guaranties and the other Financing Agreements are all valid, binding, enforceable and non-avoidable agreements of the Debtor and fully evidence the terms and conditions of the financing arrangements among the Debtor and the Lender. The Debtor further acknowledges that pursuant to the terms of the Financing Agreements, the obligations of each of Holdings and Properties to the Lender are cross-guarantied, cross-collateralized and cross-defaulted.

H.     Lender claims and Debtor acknowledges that as of September 29, 2010, the Debtor is obligated and indebted to the Lender for the following:

a)     Principal on Revolving Note: $12,929,077.76

b)     Principal on Real Estate Term Note: $1,413,750.01

c)     Accrued Interest on Revolving Note: $90,747.81

d)     Accrued Interest on Real Estate Term Note: $8,017.63

e)     Letter-of-Credit payoff amount:   $107,620.48

f)     Fees: $13,187.42

As of September 29, 2010, the above equals a total of $14,562,401.11, together with, in the case of each such obligation, interest accrued and accruing thereon, and all costs, expenses, fees (including attorneys' fees and legal expenses) and other charges now or hereafter owed by Debtor to the Lender, all of which are unconditionally owing by Debtor to Lender, without offset, defense or counterclaim of any kind, nature and description whatsoever (collectively, the "Lender Obligations"). The Lender Obligations of Debtor to the Lender are secured by valid, perfected and non-avoidable first priority liens on and security interests in substantially all of the

assets and properties of the Debtor (the personal property, described as "Collateral" in the Credit Agreement, and the Real Estate (as defined in the Credit Agreement); hereinafter collectively referred to as the "Pre-Petition Collateral"), except for certain equipment on which the Lender holds a junior priority lien and Advantage Capital Community Development Fund, XXV, LLC ("Advantage") holds a senior priority lien. Without prejudice to the rights of non-Debtor parties under paragraph 8(b) below, the Debtor will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Lender's liens, claims and/or security interest in, to or in connection with the Pre-Petition Collateral.

I.       Advantage claims that as of October 4, 2010, the Debtor is obligated and indebted to Advantage for the following (collectively, the "Advantage Obligations"):

a)       Principal on Term Loan Note I: $2,755,000.00

b)       Principal on Term Loan Note II: $3,143,676.62

c)       Accrued Interest on Term Loan Note I: $31,869.87

d)       Accrued Interest on Term Loan Note II: $3,667.62

e)       Fees: at least $17,042.72

Term Loan Note I is secured by a security interest in certain Holdings equipment, which security interest is valid, perfected and non-avoidable and senior to the security interests of Lender in such equipment, as well as liens on and security interests in all other Pre-Petition Collateral, which security interests and liens are valid, perfected, and non-avoidable and junior to the security interests and liens of Lender. Term Loan Note II is secured by liens on and security interests in the Pre-Petition Collateral, which liens and security interests are valid, perfected and non-avoidable and junior to the liens and security interests of Lender. The respective lien

priorities of Lender and Advantage are described in detail in their June 2, 2010 Intercreditor Agreement ("Intercreditor Agreement").

J.     Debtor claims and Lender acknowledges that subject to the terms and conditions set forth in this Final Order, the Lender is willing to consent to the Debtor's use of its cash collateral as defined in § 363(a) of the Bankruptcy Code ("Cash Collateral") and to make further advances of Cash Collateral during the Cash Collateral Use Period (as hereinafter defined). Nothing contained in this Final Order shall or shall be construed to waive, impair, limit or prejudice in any way the Lender's right to contest or object to any further or other use of its Cash Collateral by the Debtor.

K.     Debtor claims that it needs to use Cash Collateral and obtain further financing to pay the expenses set forth in the budget attached to this Final Order as Exhibit A (the "Budget") through the conclusion of the Cash Collateral Use Period to minimize disruption to, and to avoid the termination of, its business operations.   Entry of this Final Order will also enhance the possibility of a successful chapter 11 case.

L.     Debtor claims that no practical source of additional financing exists other than pursuant to this Final Order since the Debtor acknowledges that (a) all or substantially all of its cash constitutes collateral of the Lender; (b) the Lender will not consent to the Debtor's use of the Cash Collateral going forward without entry of this Final Order; (c) uncertainty exists over whether the Debtor could obtain approval to use any portion of the Pre-Petition Collateral or obtain a "priming" lien with respect to the Pre-Petition Collateral over the Lender's objection; and (d) the Debtor's only present means of obtaining additional funding is a debtor-in-possession loan facility provided by the Lender pursuant to § 364 of the Bankruptcy Code.

M.     Debtor claims that under the circumstances of this case, the terms and conditions

of this Final Order are in the best interests of Debtor's estate and its creditors. The terms of this Final Order have been negotiated in good faith and at arm's length between the Debtor and the Lender, and any credit extended and loans made to the Debtor by the Lender under the terms of this Final Order are deemed to have been extended or made in good faith within the meaning of § 364(e) of the Bankruptcy Code.

N.    Debtor claims that the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and properties and is in the best interests of the Debtor, its estate, creditors and equity security holders.

O.    The notice provided by the Debtor of the Motion, the Final Hearing, and the entry of this Final Order satisfy the requirements of Fed. R. Bankr. P. 4001(b) and (c) and are otherwise sufficient and appropriate under the circumstances.

IT IS HEREBY ORDERED:

1.    Authorization to Use Cash Collateral.    Debtor is authorized to use Cash Collateral in accordance with and pursuant to the terms and provisions of this Final Order.

2.    Procedure for Use of Cash Collateral.    The Debtor shall be permitted to use the Cash Collateral received by the Lender in the lockbox in accordance with this Final Order to fund the disbursements identified in the Budget for a period of time commencing on the date hereof and ending on December 31, 2010 (the "Cash Collateral Use Period"), unless extended by order of this Court. The maximum aggregate amount of Cash Collateral that the Debtor may use pursuant to this Final Order during the Cash Collateral Use Period shall not exceed the sum of $9,000,000.

3.    Additional Financing.

a.    The Debtor is authorized and empowered to borrow immediately and to obtain other financial and credit accommodations from the Lender pursuant to the terms of this Final Order, from the date hereof up to an aggregate principal amount of $1,000,000 (collectively, the "Post-Petition Debt"). The Lender is hereby authorized to honor draws on existing letters of credit issued by the Lender for the account of the Debtor. The Debtor is authorized to apply either Post-Petition Debt or Cash Collateral to reimbursement obligations created when said letters of credit are drawn upon, without further order of this Court. Cash Collateral may be obtained by Debtor utilizing funds pursuant to and in accordance with this Final Order and the Budget. The Debtor is authorized to pay all fees and other amounts that may be required or necessary for the Debtor's performance under the terms of this Final Order, including, without limitation, any expenses incurred in connection with the additional financing contemplated herein. The Debtor in Possession financing fee is $75,000.00.

b.    Debtor shall not use Cash Collateral or Post-Petition Debt in such a manner that Debtor's disbursements during any week for any line item set forth in the projections contained in the Budget exceed by more than five percent (5%) the projected amount for such line item without Lender's prior consent and in any event shall not use Cash Collateral and Post-Petition Debt so as to exceed the cumulative amount projected in the Budget for any week by more than $100,000 without further order of the Court. Accounts receivable (for purposes of the Borrowing Base Calculation) in each week shall likewise remain within five percent (5%) of Budget unless Lender consents. Debtor shall be authorized to use Cash Collateral to the limited extent provided by this Final Order including, as to Lender, for the purpose of applying receipts and Cash Collateral to pay

Lender as illustrated in the Budget.

c.      Pursuant to § 364(c)(1) of the Bankruptcy Code, the Post-Petition Debt shall have priority over any or all administrative expenses of the kind specified in §§ 503(b) or 507(b) of the Bankruptcy Code.

d.      Pursuant to §§ 364(c)(2) and 364(c)(3) of the Bankruptcy Code, as security to the extent of any Post-Petition Debt and subject to existing lien rights, Lender is hereby granted valid, binding, enforceable, non-avoidable and perfected liens on and security interests (the "DIP Liens") in hereafter acquired assets and/or properties of the Debtor and its estate, including property of the estate which may not otherwise be subject to a lien, other than claims arising by virtue of §§ 510, 544, 547, 548, 549, and 550, *et seq.*

e.      The Post-Petition Debt shall be only in the amounts authorized by this Final Order.  No other loans shall be made or letters of credit issued by Lender after the Petition Date, other than the Post-Petition Debt as set forth herein.

f.      Interest on the post-petition advances shall accrue at the rate per annum equal to the Daily Three-Month LIBOR (as defined in the Credit Agreement), resetting daily, plus seven percent (7.0%) and fees for each Letter of Credit shall accrue at the annual rate of seven percent (7%) of the amount that may then be drawn thereon, each of such rates as in effect under the Financing Agreements prior to the Petition Date, and shall be payable as and when payable under the Credit Agreement.

g.      The Post-Petition Debt shall mature and be paid in full by Debtor on the earliest of (i) December 31, 2010; (ii) the date on which the Debtor's authority to use Cash Collateral terminates pursuant to Paragraphs 4 and 5.f below; and (iii) the first day

on which an Event of Default (as hereinafter defined) occurs (the "Termination Date").

4.    <u>Termination of Financing</u>.

a.    Unless extended by the Court upon the written agreement of Lender, this Final Order and Debtor's authorization to incur Post-Petition Debt pursuant to this Final Order will automatically terminate on the Termination Date without further notice or order of the Court.  Lender will pay budgeted expenses accrued prior to the Termination Date, and Lender's payments for such expenses shall constitute Post-Petition Debt.

b.    On the Termination Date, at Lender's election, and subject to the provisions of the Intercreditor Agreement: (1) the Post-Petition Debt shall be immediately due and payable; (2) subject to the payment of the budgeted expenses that have accrued as of the Termination Date, the Lender shall be entitled to apply or set off any cash in Lender's possession or control to the Post-Petition Debt in accordance with this Final Order, until the Post-Petition Debt is indefeasibly and finally paid in full; (3) the Lender may apply to the Court on one business day's notice for immediate and automatic relief from the stay with respect to the Pre-Petition Collateral (without regard to the passage of time provided for in Rule 4001(a)(3) of the Bankruptcy Rules) and shall be entitled to exercise all rights and remedies available to it under the Financing Agreements and applicable nonbankruptcy law with respect to the Pre-Petition Collateral; (4) Debtor shall be authorized and directed to take such actions as Lender may deem necessary from time to time to assist Lender in the exercise of the rights and remedies available to Lender under the Financing Agreements and applicable nonbankruptcy law with respect to the Pre-Petition Collateral, including, without limitation, the surrender of such Pre-Petition Collateral to Lender with Lender paying reasonable costs; (5) until all

of the Post-Petition Debt shall have been indefeasibly paid and satisfied in full in cash and without further order of the Court, subject to third party rights, if any, and to the Lender being granted relief from the automatic stay, the Lender, in its discretion, in connection with a liquidation of any of the Pre-Petition Collateral may use any real property, equipment, leases, trademarks, trade names, copyrights, licenses, patents or any other assets of the Debtor which are owned by or subject to a lien of any third party and which are used by the Debtor in its business without the payment of fees or rentals to such third parties; and (6) upon the payment in full in cash of all the Post-Petition Debt owed to the Lender and termination of the Lender's obligation to lend any post-petition advances, the Lender and the Debtor shall each be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action with respect to one another pursuant to the terms of this Final Order.

5.    <u>Adequate Protection of Rights and Interests of the Lender</u>.    Subject to the provisions of the Intercreditor Agreement, as adequate protection of the rights and interests of the Lender in respect of the Debtor's use of the Lender's Cash Collateral during the Cash Collateral Use Period pursuant to the terms and conditions this Final Order:

a.    <u>Replacement Liens</u>.    To the extent that the Lender has valid and enforceable pre-petition security interests and liens, and subject to paragraph 5(b) below, the Lender is hereby granted under §§ 361, 362 and 363 of the Bankruptcy Code, as security to the extent of any diminution in the value of the Pre-Petition Collateral (which shall include, but is not limited to, the amount of Cash Collateral used by the Debtor on and after the Petition Date) valid, binding, enforceable, non-avoidable and perfected first priority replacement liens on and security interests in (the "Replacement Liens," and

collectively with the DIP Liens, the "New Liens") all currently owned and hereafter acquired assets and/or properties of the Debtor and its estate, including property of the estate which may not otherwise be subject to a lien, other than claims arising by virtue of §§ 510, 544, 547, 548, 549, and 550, *et seq.*, of the Bankruptcy Code (collectively, the "Collateral").

      b.    <u>Treatment of New Liens</u>.  The New Liens granted herein shall be subject to existing lien rights, but they shall not be made on a parity with, or be subordinated to, any other post-petition lien on or security interest in such Collateral.  The New Liens granted pursuant to this Final Order shall constitute valid and duly perfected security interests and liens, and the Lender shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the New Liens shall in no way affect the validity, perfection or priority of such New Liens.

      c.    <u>Section 507(b) Priority Claim</u>.  The Lender preserves its rights, pursuant to §§ 361 and 507(b) of the Bankruptcy Code, to make a super-priority administrative expense claim in an amount not less than the aggregate amount of all Cash Collateral used by the Debtor on and after the Petition Date, plus the amount of any other diminution in the value of the Pre-Petition Collateral on and after the Petition Date (the "Priority Claim"), which Priority Claim shall have priority over any and all other administrative expenses of the kind specified in, or ordered pursuant to, the Bankruptcy Code, except for the Post-Petition Debt.  Except for the Post-Petition Debt, no costs or

administrative expenses which have been or may be incurred in the Debtor's bankruptcy case or in any subsequent case under Chapter 7 of the Bankruptcy Code, and no priority claims, are or will be prior to or on a parity with the Priority Claim.

      d.     <u>Collateral Access</u>. The Lender and Advantage, together with their agents, representatives, investment and financial advisors, professionals, consultants or designees shall have, at any time during normal business hours, on reasonable request, access to (a) any of the premises that Debtor directly or indirectly owns, leases or otherwise has a right to occupy or use, (b) all assets and properties of the Debtor located on any such premises, including, without limitation, all books and records related to accounts receivable, inventory or any other Collateral, and (c) any employee, officer, director, agent, representative and consultant of Debtor.

      e.     <u>Reporting</u>.   The Debtor shall provide the Lender, Advantage, and Committee counsel on an ongoing basis with all reporting and financial information that the Debtor is obligated to provide the Lender pursuant to the terms of the Credit Agreement and the other Financing Agreements unless Debtor receives a written waiver of such obligation. Such reporting and financial information shall include, among other things, a daily report of the Debtor's actual sales, cash receipts and disbursements compared against projected sales, cash receipts and disbursements as reflected in the Budget. For ongoing production anticipated in Budget weeks 1 through 4, Debtor will provide Lender with a weekly report that demonstrates value added to the estate from the ongoing production. Debtor will also provide Lender with a revised Budget if requested.

      f.     <u>Right to Seek Termination of Cash Collateral Use</u>.  Notwithstanding anything to the contrary contained herein, the Lender shall have the right to terminate

Debtor's use of Cash Collateral at any time; provided, however, that the Debtor may object to such termination within one (1) business day of such termination and request an emergency hearing before this Court upon notice to the Lender, Advantage, the Office of the United States Trustee and Committee counsel in order to seek modification of such termination.

g.     Proceeds.  Subject to the Intercreditor Agreement, any and all payments, collections, or proceeds remitted to the Lender shall be received, or deemed received, by the Lender for the benefit of the Lender.  All Pre-Petition Collateral shall secure all pre-petition and post-petition debt and obligations of Debtor to Lender, and all pre-petition Cash Collateral may be applied by Lender, at its sole discretion, but subject to the provisions of the Intercreditor Agreement, to the pre-petition or post-petition debts and obligations of Debtor to it; all post-petition Cash Collateral shall be applied by Lender: (i) to the post-petition debts and obligations of Debtor to it, (ii) the diminution in the value of the Collateral, (iii) the use of Cash Collateral, and (iv) the pre-petition debts and obligations of Debtor to it.

6.     Adequate Protection of Interests for Advantage.

a.     Replacement Liens.   To the extent that Advantage has valid and enforceable pre-petition security interests and liens, as adequate protection of the interests of Advantage in Pre-Petition Collateral and, as collateral security for any diminution in the value of the Pre-Petition Collateral on which Advantage holds a valid, binding, perfected non-avoidable security interest, Advantage is granted junior priority replacement lien under §§ 361, 362, and 363 of the Bankruptcy Code in and upon all post-petition assets and properties of the Debtor, except for claims arising under §§ 510,

544, 547, 548, 549 and 550 of the Bankruptcy Code (the "Replacement Liens"); provided that, such junior priority Replacement Liens in favor of Advantage are expressly subordinate in all respects to the New Liens and other liens, claims and rights of Lender in accordance with this Final Order and consistent with the Intercreditor Agreement.

b. <u>Treatment of Replacement Liens</u>. The Replacement Liens granted Advantage pursuant to this Final Order shall constitute valid and duly perfected security interests and liens, and the Advantage shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the Replacement Liens shall in no way affect the validity, perfection or priority of such Replacement Liens.

c. <u>Section 507(b) Priority Claim</u>. Subject to the Intercreditor Agreement, Advantage preserves its rights, pursuant to §§ 361 and 507(b) of the Bankruptcy Code, to make a super-priority administrative expense claim in an appropriate amount based on the circumstances at the time of such application.

7. <u>Events of Default</u>. The occurrence of any one or more of the following events shall constitute an Event of Default under this Final Order:

a. The violation of any of the terms of this Final Order;

b. The failure to deposit all checks, drafts, cash, notes, money orders, acceptances, other remittances to Lender or otherwise in accordance with the Financing Agreements;

c. The entry of an order converting this case to a case under Chapter 7 of the

Bankruptcy Code or terminating the authority of the Debtor to conduct its business;

d. Any sale by the Debtor of the Collateral other than on the terms and conditions of this Final Order or other than as provided pursuant to the terms and provisions of the Bankruptcy Code;

e. The termination, expiration, lapse, or reduction of insurance coverage on the Collateral for any reason whatsoever;

f. The failure to pay, when due, any post–petition taxes;

g. Any warranty or representation made by the Debtor to Lender, or any financial statement or other documents heretofore or hereafter delivered to Lender, shall prove false or misleading in any material respect;

h. The appointment of a trustee in this case;

i. An Event of Default occurs as provided in the Financing Agreements as modified by this Final Order; or

j. This Final Order expires without a Court approved extension.

8. <u>Miscellaneous Provisions</u>.

a. <u>Force and Effect of Loan Documents; Conflicts</u>.  Other than as provided in this Final Order, the terms of the Financing Agreements between the Debtor and the Lender, shall govern the terms of the financing authorized by this Court.

b. <u>Objections to Obligations/Liens on Pre-Petition Collateral</u>. Notwithstanding anything to the contrary contained in this Final Order, any action, claim, or defense (hereinafter, an "Objection") that seeks to object to, challenge, contest, or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction,

disgorgement or claim of any kind, (a) the existence, validity, or amount of the Lender
Obligations owing to the Lender or the Advantage Obligations owing to Advantage as of
the Petition Date; and/or (b) the extent, legality, validity, perfection, or enforceability of
the pre-petition liens and security interests of the Lender or Advantage in the Pre-Petition
Collateral shall be filed with the Court (x) by the Committee, or any party in interest with
requisite standing, on or before February 15, 2011 (the "Objection Period").   If no
Objection is timely filed as to the Lender Obligations or the Lender's liens and security
interests, or an Objection is timely filed but denied, then (a) the Lender Obligations
owing to the Lender as of the Petition Date shall be deemed allowed in full, shall not be
subject to any setoff, recoupment, counterclaim, deduction, or claim of any kind, and
shall not be subject to any further objection or challenge by any party at any time, and the
Lender's pre-petition liens on and security interest in the Pre-Petition Collateral shall be
deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes, and (b)
the Lender (together with its successors and assigns) shall have no liability with respect
to any and all claims and causes of action related to or arising out of the Financing
Agreements, the Pre-Petition Collateral and/or the Lender Obligations owing by the
Debtor as of the Petition Date.   If no Objection is timely filed as to the Advantage
Obligations or Advantage's liens and security interests, or an Objection is timely filed but
denied, then (a) the Advantage Obligations owing to the Advantage as of the Petition
Date shall be deemed allowed in full, shall not be subject to any setoff, recoupment,
counterclaim, deduction, or claim of any kind, and shall not be subject to any further
objection or challenge by any party at any time, and Advantage's pre-petition liens on
and security interest in the Pre-Petition Collateral shall be deemed legal, valid, perfected,

enforceable, and non-avoidable for all purposes, and (b) Advantage (together with its successors and assigns) shall have no liability with respect to any and all claims and causes of action related to or arising out of its financing agreements with the Debtor, the Pre-Petition Collateral and/or the Advantage Obligations owing by the Debtor as of the Petition Date. Notwithstanding anything in this paragraph to the contrary, this Final Order shall not adversely affect or restrict the rights of any creditor of the Debtor to assert (i) any direct claims that such creditor may have against the Lender, or (ii) any equitable subordination claims against the Lender on the basis of harms incurred by such creditor.

9.     Binding Effect.

a.     Final Order. Subject to paragraph 8(b) above, this Final Order shall be binding on all parties in interest in this case, and in any converted or superseding case, and their respective successors and assigns, including any trustee, except that any trustee shall have the right to terminate this Final Order after notice and a hearing. Subject to paragraph 8(b) above, if a trustee terminates this Final Order, or if any or all of the provisions of this Final Order are hereafter modified, vacated or stayed by subsequent order of this Court or any other court, then such non-finality, termination or subsequent order shall not affect: (a) the priority, validity, enforceability or effectiveness of any lien, security interest, priority, or other benefit authorized hereby with respect to any Cash Collateral used prior to the effective date of such subsequent order (and all such liens, security interests, priorities and other benefits shall be governed in all respects by the original provisions of this Final Order); (b) the stipulations and findings contained in this Final Order; or (c) the validity, enforceability or effectiveness of the provisions of this Final Order. Except as otherwise expressly set forth in this Final Order, no third parties

are intended to be or shall be deemed to be third party beneficiaries of this Final Order.

      b.    <u>Scheduling of Status Hearing</u>.  This Court shall conduct a status hearing on the Debtor's use of Cash Collateral and incurrence of Post-Petition Debt under this Final Order on November 30, 2010, at 10 o'clock in the A.M.

      c.    This Final Order shall be effective immediately upon docketing.

    10.    <u>Payment Provisional</u>.  Notwithstanding anything to the contrary in this Final Order, all payments made to the Lender under this Final Order shall be provisional and shall be subject to (i) the objection rights described in paragraph 8(b) above, and (ii) the provisions of 11 U.S.C. § 506(b).

Dated this __9__ day of November, 2010.

                                     Eugene R. Wedoff
                                     United States Bankruptcy Judge

# EXHIBIT A

Inventory Summary

*** 11-1-2010 - Draft ***

## Agri-Best Holdings LLC, d/b/a Protein Solutions
### Chapter 11 Orderly Wind-Down Budget ($000)

| Protein Solutions Forecast | Post-Pet Actual 1 Wk Endg 10/08/10 | Post-Pet Actual 2 Wk Endg 10/15/10 | Post-Pet Actual 3 Wk Endg 10/22/10 | Post-Pet Budget 4 Wk Endg 10/29/10 | Post-Pet Budget 5 Wk Endg 11/05/10 | Post-Pet Budget 6 Wk Endg 11/12/10 | Post-Pet Budget 7 Wk Endg 11/19/10 | Post-Pet Budget 8 Wk Endg 11/26/10 | Post-Pet Budget 9 Wk Endg 12/03/10 | Post-Pet Budget 10 Wk Endg 12/10/10 | Post-Pet Budget 11/1/2010 Summary | 10/22/2010 Summary | Difference | 10/1/2010 Summary | Difference |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH FLOW FORECAST** | | | | | | | | | | | | | | | |
| Gross Sales Excluding TGIF Strips | 2,476 | 1,703 | 1,666 | 1,310 | 2,109 | 967 | - | - | - | 1,335 | 11,566 | | 3,026 | 8,541 | 3,026 |
| Discounts Offered | - | - | - | - | - | - | - | - | - | - | - | | 929 | 929 | (920) |
| Gross Sales after discount but before TGIF Strips | 2,476 | 1,703 | 1,666 | 1,310 | 2,109 | 967 | - | - | - | 1,335 | 11,566 | | 3,698 | 7,358 | 3,698 |
| Raw Material Sales (at a Discount) | - | - | - | - | - | - | - | - | - | - | - | | | 1,725 | (1,725) |
| TGIF Strip Liquidation | - | - | - | - | - | - | - | - | - | - | - | | | | |
| **NET SALES** | $ 2,476 | $ 1,703 | $ 1,666 | $ 1,310 | $ 2,109 | $ 967 | $ - | $ - | $ - | $ 1,335 | $ 11,566 | | $ (1,372) | $ 11,565 | $ (1,372) |
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Customer Payments On Pre-Petition AR | 2,290 | 1,844 | 1,550 | 1,441 | 346 | 346 | 346 | 328 | 309 | 1,881 | 10,779 | | | 8,934 | 1,845 |
| Customer Payments On Post-Petition AR | - | 172 | 465 | 413 | 997 | 1,488 | 1,765 | 1,672 | 1,579 | 1,117 | 9,656 | | | 7,958 | 1,699 |
| TGIF Strip Liquidation | - | - | - | - | - | 207 | - | - | - | 1,098 | 1,098 | | | 7,372 | (1,576) |
| Raw Material Sales (at a Discount) | - | 23 | 34 | 72 | - | 207 | - | - | - | - | 207 | | | 207 | |
| Non-AR | - | - | - | - | 10 | 4 | 42 | - | - | 23 | 129 | | | 129 | |
| Refunds of Prepaid Expenses | - | - | - | - | - | 68 | 68 | 68 | - | 29 | | | | | |
| Voidable Preference Recoveries | - | - | - | - | - | 28 | - | - | - | 26 | | | | | |
| Other Receipts | - | 13 | 13 | 13 | 52 | 10 | 5 | 5 | 5 | 25 | | | | | |
| **Total Cash Receipts** | $ 2,290 | $ 2,138 | $ 2,029 | $ 1,925 | $ 1,342 | $ 2,050 | $ 2,110 | $ 1,999 | $ 1,888 | $ 4,096 | $ 21,688 | | | $ 19,999 | $ 1,879 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| *Operating Disbursements* | | | | | | | | | | | | | | | |
| Packaging and Spices (Wire) | 32 | 222 | 118 | 51 | - | - | - | - | - | 423 | 423 | | | 350 | 73 |
| Raw Material Purchases (Wire) | 740 | 1,307 | 952 | 438 | 346 | 346 | 346 | 328 | 309 | 3,438 | 3,438 | | | 2,714 | 723 |
| Payroll & Payroll Related | 208 | 245 | 256 | 242 | 206 | 155 | 58 | 18 | 18 | 18 | 1,422 | | | 1,063 | 359 |
| Union Dues & Health | 105 | - | 7 | 115 | 7 | - | - | 18 | - | 150 | 384 | | | 345 | 39 |
| Accrued Vacation Liabilities | - | - | - | 2 | 20 | 43 | 42 | - | - | 23 | 130 | | | 130 | (0) |
| Repairs / Maintenance / Parts – Equipment | - | - | - | 13 | 10 | 4 | - | - | - | 29 | 29 | | | 29 | (0) |
| Rent | 74 | 68 | 68 | - | 68 | 68 | 68 | 68 | - | - | 484 | | | 484 | (140) |
| Freight | 32 | 18 | 9.0 | 29 | 39 | 21 | - | - | 29 | 29 | 176 | | | 175 | (0) |
| Utilities | - | - | - | 28 | - | 28 | - | - | 26 | 26 | 78 | | | 78 | |
| Insurance – Group & General | - | 37 | - | - | 52 | - | - | 24 | 56 | - | 169 | | | 164 | 5 |
| U.S. Trustee Fees | - | - | - | - | - | - | - | - | - | 13 | 13 | | | 13 | |
| Operating Lease Payments | - | - | - | 36 | 10 | 10 | - | - | - | - | 56 | | | 60 | (4) |
| Debtors Professional Fees | - | - | - | - | - | 300 | - | - | - | 200 | 500 | | | 500 | |
| UCC Professional Fees | - | - | - | - | 50 | - | - | - | - | 50 | 50 | | | 40 | 60 |
| Ordinary Course Professional Fees | - | - | - | - | 20 | 20 | - | - | - | 20 | 40 | | | 40 | |
| Cleaning services | 13 | 13 | 13 | 13 | 13 | - | - | - | - | - | 40 | | | 63 | |
| SGA, Plant, ADP | 1 | 10 | 23 | 12 | 20 | 10 | 5 | 5 | 5 | 25 | 116 | | | 155 | (39) |
| **Total Operating Disbursements** | 1,205 | 1,866 | 1,463 | 978 | 495 | 658 | 173 | 115 | 79 | 554 | 7,623 | | | 6,451 | 1,172 |
| *Debt-service Payments* | | | | | | | | | | | | | | | |
| PJ&I - Bank | - | - | - | - | 92 | - | - | 74 | - | - | 166 | | | 123 | 43 |
| Bank Fees | - | 5 | - | - | 100 | - | - | 17 | - | 50 | 122 | | | 117 | 5 |
| PJ&I - Leases / Adequate Protection Payments | - | - | - | 50 | - | 50 | - | - | - | 50 | 150 | | | 150 | |
| Bank Professional Fees | - | - | - | - | - | 100 | - | - | - | 50 | 150 | | | 150 | |
| **Total Debt Service Payments** | - | 5 | - | 50 | 192 | 150 | - | 91 | - | 100 | 588 | | | 540 | 48 |
| **Total Cash Disbursements** | $ 1,205 | $ 1,891 | $ 1,463 | $ 1,028 | $ 687 | $ 808 | $ 173 | $ 115 | $ 170 | $ 654 | $ 8,211 | | | $ 6,991 | $ 1,220 |
| **NET CASH FLOW** | $ 1,085 | $ 247 | $ 546 | $ 898 | $ 656 | $ 1,242 | $ 1,937 | $ 1,884 | $ 1,718 | $ 3,443 | $ 13,657 | | | $ 12,997 | $ 659 |
| | | | | | | | | | | | | | | | |
| OPERATING ACCOUNT - BEG. BALANCE | 57 | 40 | 169 | 126 | 358 | (0) | (0) | (0) | (0) | (0) | 57 | | | 38 | 19 |
| Less Disbursements | (1,138) | (1,891) | (1,463) | (1,028) | (687) | (808) | (173) | (115) | (170) | (654) | (8,144) | | | (6,991) | (1,153) |
| Plus Receipts | 1,121 | 2,020 | 1,460 | 1,260 | 328 | 808 | 173 | 115 | 170 | 654 | 8,687 | | | 6,935 | 1,152 |
| OPERATING ACCOUNT - END. BALANCE | $ 40 | $ 169 | $ 126 | $ 358 | $ (0) | $ (0) | $ (0) | $ (0) | $ (0) | $ (0) | $ 57 | | | $ (18) | $ 18 |

Focus Management Group
For Confidential Settlement Discussions. Subject to F.R.E. 408 and State Equivalents.
Revised Draft. Subject to Material Change. UNAUDITED.

Actuals and Rolling Forecast
Page 1 of 4

Protein Solutions - Draft Liquidating 11 Budget 11-1-10
11/1/2010; 1:13 PM

Inventory Summary

*** 11-1-2010 - Draft ***

**Agri-Best Holdings LLC, d/b/a Protein Solutions**
**Chapter 11 Orderly Wind-Down Budget ($000)**

| Protein Solutions | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Forecast | Actual 1 | Actual 2 | Actual 3 | Post-Pet Budget 4 | Post-Pet Budget 5 | Post-Pet Budget 6 | Post-Pet Budget 7 | Post-Pet Budget 8 | Post-Pet Budget 9 | Post-Pet Budget 10 | Post-Pet Budget 11 Summary | |
| Week No. | Wk Endg 10/08/10 | Wk Endg 10/15/10 | Wk Endg 10/22/10 | Wk Endg 10/29/10 | Wk Endg 11/05/10 | Wk Endg 11/12/10 | Wk Endg 11/19/10 | Wk Endg 11/26/10 | Wk Endg 12/03/10 | Wk Endg 12/10/10 | Summary | |

**BORROWING BASE FORECAST**

_Accounts Receivable (AR)_

Beg. Balance - Gross AR
Plus: Sales
Less: AR Cash Receipts
Less: Collection Discount
End. Balance - Gross AR
Less: AR Ineligibles
AR for BBC
AR Advance Rate
AR Availability

_Inventory_

Beg. Balance - Inventory
Plus: Inventory Inbound (excluding packaging)
Plus: Inventory F.G. Creation
Less: F.G. Sales (Excluding Strips)
Less: F.G. Liquidation (at Cost)
Less: TGIF Strip Sales (at Cost)
Less: Raw Material Sales (at Cost)
Less: Raw Material Liquidation (at Cost)
Less: Raw Usage
End. Balance - Inventory
Less: Ineligibles
End. Balance - Inventory
Inventory Advance Rate
Inventory Availability

**Total Collateral - Gross**

_Availability_

Collateral Availability - Gross
Less: Gross Avail. Reserves
Less: Tax Reserve
BBC Availability

Less:

_Revolving Loan_

Beg. Balance - Revolving Loan
Plus: Total Cash Receipts
Less: Total Funding Draws
Ending Balance - Revolving Loan

_Reserves_

Less: Cash Reserve
Less: L/C's
Less: McCook Reserve
Less: Credit Cards

**NET AVAILABILITY (EST.)**

Net Change

Focus Management Group
For Confidential Settlement Discussions. Subject to F.R.E. 408 and State Equivalents.
Revised Draft. Subject to Material Change. UNAUDITED.

Actuals and Rolling Forecast
Page 2 of 4

Protein Solutions - Draft Liquidating 11 Budget 11-1-10
11/1/2010, 1:13 PM